**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| DONALD MULDER, SYLVESTER JACKSON, VENTAE PARROW, DIMARCO McMATH, JASON LATIMORE, GLENN DAVIS, BRIAN ANTHONY, LONNIE DOMZIL, CHRIS BILLS, MATTHEW SCHECHTER, and EDDIE McCLENTON, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | No. 2:17 C 732 |
| Plaintiffs, | ) | |
| v. | ) ) | |
| CITY OF MILWAUKEE, WISCONSIN, | ) ) | |
| Defendant. | ) ) | Jury Trial Demanded |

**AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT AND OTHER INJUNCTIVE RELIEF**

Plaintiffs Don Mulder, Sylvester Jackson, Ventae Parrow, Dimarco McMath, Jason Latimore, Glenn Davis, Brian Anthony, Lonnie Domzil, Chris Bills, Matthew Schechter, and Eddie McClenton, individually and on behalf of all others similarly situated, by their undersigned attorneys, complain against Defendant City of Milwaukee, Wisconsin, as follows:

**Nature of the Case**

1. This is an action pursuant to 42 U.S.C. §1983 and 28 U.S.C. §2201 against the City of Milwaukee (the "City") challenging the constitutionality of certain provisions of Chapter 106-51 of the Milwaukee Code of Ordinances, effective January 14, 2015 (the "Ordinance"). See Exhibit A. The challenged provisions

1

violate Plaintiffs' constitutional rights, as well as the rights of the putative class that Plaintiffs seek to represent.

2.     Plaintiffs challenge three specific provisions of the Ordinance.

- **The Residency Restriction, §106-51(3)(a):** This provision makes it unlawful for a Designated Offender to establish a permanent or temporary residence "within 2,000 feet of any school, licensed day care center, park, recreational trail, playground or any other place designated by the city as a place where children are known to congregate." [1]

- **The Residency Restriction Exceptions, §106-51(4)(a) and (d)**: Section 4(a) allows a Designated Offender to reside anywhere in the City if he "established a permanent or temporary residence … before the effective day of this section." Section §4(d) allows Designated Offenders to reside in the primary residence of their "spouse, parents, grandparents siblings, or children provided that the spouse, parents, grandparents siblings, or children established the residence at least 2 years before the designated offender established residence at the location."

- **The Original Domicile Provision, §106-51(5):** This provision makes it unlawful for a Designated Offender "to reside in the city, unless such person was domiciled in the city at the time of the offense resulting in the person's most recent conviction."

3.     Plaintiffs contend that these three provisions violate the U.S. Constitution in at least four ways:

(1)     The challenged provisions, both individually and in combination, violate the Ex Post Facto Clause because they apply retroactively and

---

[1]     The Ordinance defines "Designated Offender" as "any person who is required to register under §301.45, Wis. Stats. for any offense against a child or any person who is required to register under §301.45, Wis. Stats. and who has been designated a Special Bulletin Notification (SBN) sex offender pursuant to §301.46(2) and (2m), Wis. Stats." §106-51(2)(b). The Ordinance defines "Permanent Residence" as "a place where the person abides, lodges or resides for 14 or more consecutive days." §2(c). The Ordinance defines "Temporary Residence" as "a place where the person abides, lodges or resides for a period of 14 or more days in the aggregate during any calendar year ... or a place where the person routinely abides, lodges or resides for a period of 4 or more ... days in any month ..." §2(d).

impose punishment by effectively banishing Designated Offenders from living anywhere in Milwaukee;

(2)     The Original Domicile clause violates the Fourteenth Amendment guarantee of equal protection because the distinction it draws between people based solely on where they lived at the time of their offense is not rationally related to a legitimate state interest;

(3)     The Residency Restriction Exceptions violate the Equal Protection Clause of the Fourteenth Amendment because they draw distinctions between different groups of Designated Offenders that are not rationally related to a legitimate state interest; and

(4)     The Residency Restrictions violate the Due Process Clause of the Fourteenth Amendment because the restriction on living within 2,000' of "any other place designated by the city as a place where children are known to congregate" is unconstitutionally vague.

4.     The Ordinance subjects anyone who resides in a location that violates the Residency Restrictions to a fine "of not less than $1,000 not more than $2,500" for each violation, and defines "each day a violation continues" as constituting a separate offense. A person who fails to pay such a fine "may be imprisoned." §106-51(6).

5.     Plaintiffs seek injunctive relief, as well as declaratory relief, on the grounds that the Ordinance is unconstitutional on its face and as applied to Plaintiffs and the members of the class. Plaintiffs also seek reasonable monetary damages for the injuries associated with the deprivation of their constitutional rights and/or nominal damages.

3

## Jurisdiction and Venue

6.      Jurisdiction is proper in this court pursuant to 28 U.S.C. §1331 because this action arises under federal law. Specifically, this case arises under 42 U.S.C. §1983 and alleges violations of the United States Constitution.

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the events giving rise to Plaintiffs' claims occurred in the Eastern District of Wisconsin.

8.      Declaratory relief is authorized under 28 U.S.C. §2201. A declaration of law is necessary and appropriate to determine the respective rights and duties of parties to this action.

## The Parties

8.      Plaintiffs are all residents of the City of Milwaukee (save Plaintiff Schechter who lives in West Milwaukee but seeks to live in the City of Milwaukee) and are all subject to the challenged provisions of the Ordinance.

9.      Defendant City of Milwaukee is a municipal corporation governed by a Common Council, which, among other things, is empowered to enact ordinances under its home rule authority.

## FACTUAL ALLEGATIONS

## Allegations Common to All Plaintiffs

10.      Pursuant to §3(b-2) of the Ordinance, an official map of the City of Milwaukee is maintained by the City Clerk showing all of the locations where Designated Offenders are prohibited from living in the City (*e.g.*, prohibited zones). This map shows that an overwhelmingly large percentage of the geographic area of

4

the City (approximately 97 percent) is designated as a prohibited zone in which Designated Offenders are prohibited from living. Ex. A at 4.

11.    Because such a large proportion of the City is off limits to Designated Offenders, each of the Plaintiffs is harmed in one of two ways: (a) they are either homeless because they are unable obtain compliant housing; or (b) they are confined to their current addresses and cannot move anywhere else within the City of Milwaukee, despite wanting to move.

12.    Similarly, the Ordinance's original domicile provision impacts Designated Offenders in two ways. A Designated Offender who was not domiciled in Milwaukee at the time of his most recent offense is (subject to certain exceptions)[2] either permanently banned them from ever moving to Milwaukee even if he could find and afford compliant housing among the approximately three percent of the City that is not put off limits by the Ordinance; or, assuming he was living in his residence in Milwaukee at the time of the City's passage of the Ordinance (July 22, 2014), the offender can remain in his current residence, but is prohibited from ever moving to a new residence within the City even if he were able to find and afford compliant housing in the City.

---

[2]    Section 4 of the Ordinance exempts from the Original Domicile Restriction anyone who "established a residence and reported and registered the residence ... before the [July 22, 2014]"; anyone who "was under 17 years of age [at the time of his offense]" and; anyone who seeks to reside at a residence that is "also the primary residence of the person's spouse, parents, grandparents, siblings or children provided that the spouse, parents, grandparents, siblings or children established the residence at least 2 years before the designated offender established residence at the location."

## Facts Pertinent to the Individual Plaintiffs

**Donald Mulder**

13.     Plaintiff Mulder is a 52-year-old resident of Milwaukee. Due to a 2005 conviction, he is classified as a "Designated Offender" under the Ordinance.

14.     He lived in Greenfield, Wisconsin at the time of his offense in 2003 and is thus subject to the Ordinance's Original Domicile provision.

15.     Currently, Mulder lives in a single room at 822 N. 24th Street. He has lived there since November of 2013. He is a renter and pays $400 per month.

16.     Mulder is allowed to remain at this residence because he "reported" and "registered" it prior to the effective date of the Ordinance.

17.     Mulder wants to move out of his current residence and the neighborhood in which it is located, but he cannot do so, since the original domicile provision prevents Mulder from moving anywhere else in the City.

18.     Mulder is married. He and his wife want to live together in Milwaukee, but they are forced to live separately. Mulder's wife cannot move into his current residence because it is too small for two people to live in and the residence is located in an undesirable and unsafe neighborhood. At the same time, the original domicile provision prevents Mulder from living anywhere else in Milwaukee.

19.     Wholly separate from the restrictions imposed on Mulder by the original domicile provision, Mulder and his wife are not able to find housing in Milwaukee that is compliant with the Residency Restrictions, despite their extensive search for compliant housing.

6

20.     Mulder and his wife have investigated every one of the addresses on the formal list published by the City of Milwaukee identifying compliant addresses (Ex A at 2), but not a single address on the list was available to rent.

21.     Because Mulder is currently on extended supervision, he is unable to move out of Milwaukee County under state law. Wis. Stats. §301.03(20)(a).

22.     Mulder's wife lives in Glendale, Wisconsin. He cannot move to his wife's home in Glendale, because Glendale, like many of the communities in Milwaukee County, imposes its own "original domicile" restriction that prohibits individuals convicted of sex offenses from moving to the community if they did not live there at the time of their offense.

23.     The Wisconsin Department of Corrections has told Mulder that he is prohibited from living in the City of Greenfield, which is where he lived at the time of his offense, due to his victim living there.

24.     Both Mulder and his wife are veterans of the U.S. military.

25.     Mulder is currently recovering from several surgeries and has limited mobility and difficulty adequately caring for himself. His inability to live with his wife during his recovery is a serious burden on both Mulder and his wife.

**Sylvester Jackson**

26.     Plaintiff Jackson is 50 years old. Due to a 2008 conviction, he is classified as a "Designated Offender" under the Ordinance. Jackson lived in Milwaukee at the time of his offense.

27.     Jackson currently lives in Milwaukee and is homeless because he

7

cannot find any compliant housing, despite having looked for housing for years.

28.     Jackson usually sleeps in his broken-down car, which cannot be started due to a defective alternator.

29.     Jackson has numerous serious health problems, including diabetes, sleep apnea and asthma. He must wear a c-pack breathing machine at night to breathe properly. He fears that being homeless puts his life at risk for two reasons: (i) he is unable to plug in his c-pack machine at night and (ii) he is a diabetic and does not have ready access to refrigerated food to allow him to eat properly.

**Ventae Parrow**

30.     Plaintiff Parrow is 39 years old. Due to his 2001 conviction, he is classified as a "Designated Offender" under the Ordinance. Parrow will be on supervision until October 23, 2017, and probation until 2021. He lived in Milwaukee at the time he committed his offense.

31.     Parrow was recently re-arrested for violation of the terms of his extended supervision and is in the Milwaukee County Detention Center. Parrow plans to return to Milwaukee after his release.

32.     Parrow has lived in Milwaukee since his release from prison. He was homeless until his recent arrest.

33.     Due to the residency restrictions imposed by the Ordinance, Parrow is unable to find any compliant housing.

34.     Parrow stays in a different location every day to sleep, moving from one friend's house to another every day. He has been told by his parole agent,

Shannon Meyer, that he cannot stay in anyone's home for more than one day at a time.

35.    The City has published a list identifying the addresses in the City of Milwaukee that are not in the prohibited zones. Ex. A at 2.

36.    Parrow has investigated all of these addresses to seek out available housing, but none of them are available to rent and indeed some of the addresses do not even exist.

**Dimarco McMath**

37.    Plaintiff McMath is 35 years old. Due to a 2000 conviction, he is classified as a "Designated Offender" under the Ordinance. McMath is not under any legal supervision. He lived in Milwaukee at the time he committed his offense.

38.    McMath currently lives in Milwaukee at his mother's home at 7315 W. Carmen, which is located in a prohibited zone. He is legally permitted to live there pursuant to the §4(d) of the Ordinance, which allows Designated Offenders to reside in the primary residence of their "spouse, parents, grandparents siblings, or children provided that the spouse, parents, grandparents siblings, or children established the residence at least 2 years before the designated offender established residence at the location."

39.    McMath would like to move out of his mother's home and live in his own place, and he can afford to do so. But due to the residency restrictions imposed by the Ordinance, he is unable to find any compliant housing and is restricted to living with his mother.

**Jason Latimore**

40.     Plaintiff Latimore is 38 years old. Due to a 1997 conviction, he is classified as a "Designated Offender" under the Ordinance. Latimore successfully completed five years of probation and is not under any legal supervision. He lived in Milwaukee at the time he committed his offense.

41.     Latimore currently lives in Milwaukee at his parents' house at 2603 34th St. He has lived there for three years. The house is located in a prohibited zone, but he is able to live there pursuant to §4(d) of the Ordinance, which allows Designated Offenders to reside in the primary residence of their "spouse, parents, grandparents siblings, or children provided that the spouse, parents, grandparents siblings, or children established the residence at least two years before the designated offender established residence at the location."

42.     Latimore would like to move out of his parent's home, but due to the residency restrictions imposed by the Ordinance, he is unable to find any other compliant housing.

**Glenn Davis**

43.     Plaintiff Davis is 64 years old. Due to a 1997 conviction, he is classified as a "Designated Offender" under the Ordinance. Davis is on parole until 2018.

44.     Davis, a veteran of the United States armed forces, currently lives at the domiciliary of the Veteran's Administration Hospital, located at 5000 W. National, Milwaukee, Wisconsin, but he is only able to stay there temporarily and

only through the good graces of the VA hospital, and he has been told that he must move out of the domiciliary by the end of August 2017.

45.     Prior to his living at the domiciliary, Davis lived in Milwaukee in a "rooming house," which is occupied by other registered sex offenders. It is located at 822 N. 24th St., an area marred by crime and violence. This address is within a block of a school, but Davis had been allowed to stay there because he was grandfathered in pursuant to §4(a) of the Ordinance, which allows a Designated Offender to reside anywhere in the City if he established and registered the residence "before the effective day of this section."

46.     Davis would like to move out of this "rooming house," but due to the residency restrictions imposed by the Ordinance, he is unable to find any other compliant housing.

**Brian Anthony**

47.     Plaintiff Anthony is 38 years old. Due to a 2002 conviction, he is classified as a "Designated Offender" under the Ordinance. He lived in Milwaukee at the time of his offense in 2002.

48.     Anthony currently lives in a house located 3537 S. Brust Ave., Milwaukee, Wisconsin, and has lived there since December 6, 2016. He lives with his aunt, uncle and one cousin. He moved into the house to help care for his uncle who has dementia.

49.     The residence is non-compliant with the Residency Restrictions imposed by the Ordinance because it is within 2,000 feet of a park.

50.  On February 2, 2017, Anthony received a ticket for living at his current address in violation of the Residency Restrictions, §106-51(3)(a).

51.  On March 24, 2017, Anthony appeared at the Milwaukee City Municipal Court to challenge the ticket.

52.  Anthony was found guilty and fined $1,000 for the offense.

53.   At the hearing, the judge reduced the original fine from $1,321 to $1,000 and encouraged Anthony to "talk to the ACLU" about the matter, noting that Anthony was not the only person who was being ticketed and fined for living in violation of the residency restrictions.

54.  Anthony subsequently called the ACLU in Milwaukee, but he never received a response to the messages he left.

55.  According to the Order entered by the court on March 24, 2017, Anthony has until August 14, 2017 to pay "the total amount of the fine" or "may be ordered to serve 20 days in jail."

56.  Anthony cannot afford to pay the fine in full and is afraid he is at imminent and serious risk of being thrown into jail; and he is also afraid that he will receive more tickets in the future.

57.  Anthony does not have any other place to reside and, if forced to move from his current residence, will be thrown into homelessness.

58.  Prior to moving to his current residence, Mr. Anthony lived in his van from September 2016 until December 6, 2016, due to an inability to find compliant

housing in the City.

**Lonnie Domzil**

59. Plaintiff Domzil is a 47-year-old resident of Milwaukee. Due to a 2005 conviction, he is classified as a "Designated Offender" under the Ordinance.

60. Domzil lived in Cudahy, Wisconsin and Sullivan, Wisconsin when he committed his offense and is thus subject to the Ordinance's Original Domicile provision.

61. Domzil is currently homeless and lives in his van six days a week and in a hotel once a week. He has been homeless in Milwaukee since his release from prison in July of 2015.

62. Domzil stays in a hotel every seventh day because he has been told by his parole officer, Carly Patskowski, that he cannot stay in the same place nine days in a row.

63. Domzil would like to find stable housing and has searched to find such housing in Milwaukee, but he has been unable to find any.

64. Mr. Domzil receives social security disability of $999 per month and veteran's compensation for a 100% disability suffered during his service in the Gulf War. He is a widow and has two adult children.

**Chris Bills**

65. Plaintiff Bills is 34 years old. Due to a 2001 conviction, he is classified as a "Designated Offender" under the Ordinance. He lived in Milwaukee at the time of his 2002 offense.

66. Bills currently lives in a townhouse located at 3048 W. Iona Terrace, Milwaukee, 53221. He lives there with his son, 14, and the mother of his son, as well as five other people.

67. The residence is located in a prohibited location under the terms of the Ordinance, but Bills is permitted to live there subject to the exemption set forth in §4(d) of the Ordinance which exempts a "residence" that is "the primary residence of the person's spouse, parents, grandparents, siblings or children provided that the spouse, parents, grandparents, siblings or children established the residence at least 2 years before the designated offender established residence at the location."

68. Bills would like to move to a larger residence. The current residence is a three-bedroom place and eight people currently live there.[3]

69. Due to the Residency Restrictions imposed by the Ordinance, he has been unable to find any available alternate housing, despite having searched vigorously for such housing.

70. Bills' housing search is complicated by the fact that his son is autistic and goes to a special school, called the Garland School, located at 3120 West Green Ave.; and Bills seeks to stay in the area where he currently resides to insure that his son can attend this school.

**Matthew Schechter**

71. Plaintiff Schechter is 48 years old. Due to convictions in 1994 and 1999,

---

[3] Along with Bills himself and Bills' 14-year-old son and the mother of his son, the household also includes Bills' sister and nephew, his son's grandmother, and his two other young children, aged 4 and 6, over whom he has full custody.

he is classified as a "Designated Offender" under the Ordinance.

72. Schechter lived in Brown Deer, Wisconsin in 1994 when he committed an offense of which he was convicted of in 1994; and he lived in Milwaukee in 1993 for an offense of which he was convicted in 1999.[4]

73. Mr. Schechter currently resides in an apartment building called Caesar's Inn, located at 5577 W. National Ave., West Milwaukee, 53214. He has lived there since August 10, 2016. The building has approximately 30 units, he pays $500 per month for rent.

74. Mr. Schechter seeks to move to Milwaukee, but he is unable to find any compliant housing due to the residency restrictions imposed by the Ordinance.

75. Mr. Schechter is employed full time at Harrigan Solutions in Menomonie Falls as a fluid specialist working at a Harley-Davidson plant.

**Eddie McClenton**

76. Eddie McClenton is 57 years old. Due to a 1993 conviction, he is classified as a "Designated Offender" under the Ordinance. He lived in Milwaukee at the time he committed his 1993 offense.

77. McClenton currently lives at 5045 N. 47th Street in Milwaukee. He lives with his fiancé and two children, who are 11 and 8 years old. This current address does not comply with the residency restrictions because it is within 2,000 feet of a high school.

---

[4] Schechter is not subject to the Ordinance's original domicile provision. The original domicile provision allows Designated Offenders to reside in Milwaukee based on whether they resided in Milwaukee "at the time of the offense resulting in the person's most recent conviction." Schechter's most recent conviction was in 1999 for an offense he committed in 1993, at which time he lived in Milwaukee.

78. Prior to moving into his current residence. McClenton lived on the first floor of a duplex at 3734 N. 10th Street in Milwaukee and in an apartment at 5802 N. 83rd Street in Milwaukee.

79. On January 18, 2016, McClenton received a letter, titled "Notice of Violation," from Edward A. Flynn, the Chief of the Milwaukee Police Department, notifying him that by living at his residence at 3734 N. 10th Street in Milwaukee he had violated the Residency Restrictions and would be subject to fines if he did not move.

80. McClenton subsequently was ticketed and fined for residing at this address in violation of the Residency Restrictions. A default judgment was entered against McClenton in the amount of $1,321.00 on November 14, 2016.

81. On December 21, 2016 and June 9, 2017, follow-up notices of judgment were sent to McClenton. The June 9, 2017 notice of judgment shows an amount due of $1,281 (McClenton has paid $40.00 on the initial $1,321.00 judgment). The notice of judgment threatens that McClenton "may be ordered to serve 26 days in jail" if he does not pay the total amount due on or before August 8, 2017.

82. On July 25, 2017, McClenton received a "Notice of Arrest and Collection Action" stating that a warrant will be issued for his arrest and he will be incarcerated if he does not pay $1,281.00 before August 8, 2017.

83. McClenton cannot afford to pay the fine in full and he is afraid he is at imminent risk of being thrown into jail for failure to pay the fine.

84.     On January 13, 2017, McClenton received a letter from Edward A. Flynn, the Chief of the Milwaukee Police Department, that his residence at 5802 N. 83rd St in Milwaukee also violated the Residency Restrictions and that he would be fined for living there.

85.     McClenton is afraid that he will receive more tickets in the future for living at his current residence.

## Class Allegations

86.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the proposed Plaintiff Class.

87.     Plaintiffs seek to represent two classes. First, pursuant to Federal Rule of Civil Procedure 23(b)(2) of the Federal Rules of Civil Procedure, the named Plaintiffs seek to represent a class of similarly situated individuals who are currently (or will be in the future) classified as Designated Offenders under the challenged Ordinance and thus subject to its restrictions. Plaintiffs seek injunctive and declaratory relief against Defendant City of Milwaukee prohibiting enforcement of these provisions on behalf of the class ("the injunctive class"). Because the City has acted on grounds generally applicable to the class, final injunctive and declaratory relief with respect to the class as a whole is appropriate.

88.     Second, pursuant to Federal Rule of Civil Procedure 23(b)(3), the named Plaintiffs who have received tickets also seek to represent a class of all persons who, during the Class Period, have been ticketed pursuant to §106-51 of the

Milwaukee Code of Ordinances. Plaintiffs seek monetary damages on behalf of this class ("the damages class").

89.    Plaintiffs meet the requisites for filing a class action. Certification of a class pursuant to Rule 23 is the most efficient means of adjudicating these claims because (1) the classes are so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the classes; (3) the claim of the representative Plaintiffs are typical of the claims of the classes; and (4) the representative Plaintiffs will fairly and adequately protect the interests of the class.

90.    **Numerosity:** The members of the Class are so numerous that their joinder is impracticable. On information and belief, dozens of Class members have been ticketed and fined pursuant to the Ordinance. The precise number of Class members is presently unknown to Plaintiffs, but can be obtained from Defendant City's records.

91.    **Commonality:** Because this lawsuit is a facial challenge to the Ordinance, the central question of law—whether §106-51 of the Milwaukee Code of Ordinances' prohibition on living "within 2,000 feet of any school, licensed day care center, park, recreational trail, playground or any other place designated by the city as a place where children are known to congregate" violates the U.S. Constitution on its face—is common to the Class. This question predominates over any questions affecting only individual Class members.

92.    **Typicality**: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and the Class members have been (a) ticketed and/or fined for violation of §106-51 of the Milwaukee Code of Ordinances.

93.    **Adequacy:** Plaintiffs are adequate representatives of the Class because their interests overlap with and are not in conflict with the interests of the Class. Plaintiffs have retained counsel competent and experienced in class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

94.    **Superiority**: A class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure is superior to other available means for a fair and efficient adjudication of this controversy. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the action to address defendant's unconstitutional conduct.

## COUNT I
## 42 U.S.C. § 1983: VIOLATION OF THE EX POST FACTO CLAUSE

95.    Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

96.    The Challenged Ordinance violates the Ex Post Facto Clause of the U.S. Constitution, Art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to enactment of the Ordinance and it applies retroactively—that is, it applies to all individuals deemed "Designated Offenders" who committed their offenses before enactment of the Ordinance.

19

WHEREFORE, Plaintiffs request that this Court:

A.    Enter a declaration that §§106-51(3)(a) and 106-51(5) of the Milwaukee Code of Ordinances violate the Ex Post Facto Clause of the U.S. Constitution;

B.    Enter a preliminary and then a permanent injunction barring Defendant City of Milwaukee and its agents, servants, employees and attorneys from enforcing §106-51(3)(a) and 106-51(5) of the Milwaukee Code of Ordinances against Plaintiffs and the members of the injunctive class;

C.    Enter judgment in favor of Plaintiffs and the members of the damages class and against Defendant City of Milwaukee for monetary damages to be determined at trial;

D.    Enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

E.    Grant Plaintiffs any and all other relief as law and justice demand.

## COUNT II
## 42 U.S.C. §1983: FOURTEENTH AMENDMENT EQUAL PROTECTION

97.    Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

98.    The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which the U.S. Supreme Court has explained means that "all persons similarly situated should be treated alike" unless the difference in treatment is "rationally related to a legitimate state interest."

99.    The Ordinance violates the Equal Protection Clause in two ways. First, pursuant to the Original Domicile Provision (§106-51(5) of the Milwaukee Code of

Ordinances), it distinguishes between groups of Designated Offenders based on where they lived at the time of their offense and prohibits those who did not live in Milwaukee at the time of their offense from living in Milwaukee.

100.    Second, pursuant to the Residency Restriction Exceptions, §106-51(4)(a) and (d) of the Milwaukee Code of Ordinances, the City prohibits Designated Offenders from residing in an overwhelmingly large percentage of the City unless such person "established a permanent or temporary residence and reported and registered the residence … before the effective day of this section [July 22, 2014]" or resides in the primary residence of their "spouse, parents, grandparents siblings, or children provided that the spouse, parents, grandparents siblings, or children established the residence at least 2 years before the designated offender established residence at the location."

101.    There is no rational reason for the difference in treatment of Designated Offenders based on where they lived at the time if their offense; where their family members live; how long their family members have lived at a particular address; or where they lived at the time of the enactment of the Ordinance.

102.    When it enacted these restrictions, the City did not obtain or consider any evidence that Designated Offenders pose different risks based on where they lived at the time of their offense; where they lived at the time the Ordinance was enacted; or where their family members live or how long their family members have lived at a particular address.

103.    The difference in treatment between Designated Offenders under the

Ordinance is not rationally related to a legitimate state interest and thus fails rational basis review.

WHEREFORE, Plaintiffs request that this Court:

A.   Enter a declaration that §§106-51(4)(a) and (d) and 106-51(5) of the Milwaukee Code of Ordinances violate the Ex Post Facto Clause of the U.S. Constitution;

B.   Enter a preliminary and then a permanent injunction barring Defendant City of Milwaukee and its agents, servants, employees and attorneys from enforcing §§106-51(4)(a) and (d) and 106-51(5) of the Milwaukee Code of Ordinances of the Milwaukee Code of Ordinances against Plaintiffs and the members of the injunctive class;

C.   Enter judgment in favor of the named Plaintiffs and against Defendant City of Milwaukee for monetary damages to be determined at trial;

D.   Enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

E.   Grant Plaintiffs any and all other relief as law and justice demand.

## COUNT III
## 42 U.S.C. § 1983:
## FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

104.   Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

105.   The Due Process Clause of the Fourteenth Amendment prohibits government entities from imposing or enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient clarity that persons of ordinary intelligence need not guess at their meaning.

106.   The provisions in §3(a) restricting Designated Offenders from living

within 2,000' of "any other place designated by the city as a place where children are known to congregate" is invalid under the vagueness doctrine because the provision fails to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute, making it impossible for the Plaintiffs to conform their conduct to the statutory requirements and making it likely that law enforcement officials will enforce the statutes in different ways in different places or against different people.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Enter a declaration that §3(a)'s restrictions on Designated Offenders' living within 2,000' of "any other place designated by the city as a place where children are known to congregate" is unconstitutional both on its face and as applied to Plaintiffs;

B.  Enter a preliminary and then a permanent injunction barring Defendant City of Milwaukee and its agents, servants, employees and attorneys from enforcing §106-51(3)(a)'s restrictions on Designated Offenders' living within 2,000' of "any other place designated by the city as a place where children are known to congregate" against Plaintiffs and members of the injunctive class;

C.  Enter judgment in favor of the named Plaintiffs and against Defendant City of Milwaukee for monetary damages to be determined at trial;

D.  Enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

E.  Grant Plaintiffs any and all other relief as law and justice demand.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Mark G. Weinberg

/s/ Adele D. Nicholas

*Counsel for Plaintiff*

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869