# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

DONALD MULDER, et al.,
individually and on behalf of all
others similarly situated,

Plaintiffs,

v.                                                           Case No. 17-CV-732

CITY OF MILWAUKEE,

Defendant.

## BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR
## A PRELIMINARY INJUNCTION

Defendant, City of Milwaukee (the "City"), through counsel, respectfully opposes the Plaintiffs' motion for entry of a preliminary injunction barring the City from enforcing Milwaukee Code of Ordinances ("MCO") 106-51-3-a and 106-51-5. In opposition to this motion, the City states as follows:

## FACTUAL BACKGROUND

On May 8, 2007, the City created a file to introduce its first sex offender residency restriction ordinance. (Def's Ex. 1, Milwaukee Legislative File #070237.) This legislation was met with great resistance from the State of Wisconsin Department of Corrections ("DOC"), citing the need for statewide uniformity and providing assurances to the City that DOC would work with the state legislature. (Def's Ex. 2, Mayor Barrett Letter, at 1.) Ultimately, the City did not vote on its sex offender residency restriction ordinance and

placed the matter on file in 2012. (Def's Ex. 1 at 1.) Meanwhile, of the 19 municipalities in Milwaukee County, 14 of the City's neighboring municipalities adopted sex offender residency restrictions. These ordinances significantly limited the availability of lawful housing for sex offenders within Milwaukee County. (*See* Def's Ex. 3, Michael Murphy Letter, at 3.) Despite pleas to DOC to discontinue placement of sex offenders within the City until a fair and equitable resolution statewide was found, registered sex offenders routinely and disproportionately moved to the City regardless of their residence at the time of their offense. (*See id.*)[1]

Years later, the City became the fifteenth municipality in Milwaukee County to adopt its sex offender residency restriction, MCO 106-51 (the "Ordinance"). (*See* Def's Ex. 4, MCO 106-51.)[2] The original version of the Ordinance, effective October 7, 2014, did not include an original domicile restriction. (*See* Def's Ex. 5, Milwaukee Legislative File #140364.) Soon thereafter, the remaining four municipalities in Milwaukee County adopted a similar sex offender residency restriction; now every Milwaukee County municipality has some form of a sex offender residency restriction. (*See* Def's Ex. 6, Milwaukee County Municipal Ordinances.) Without an original domicile restriction, the City continued to disproportionately receive recently released sex offenders in Milwaukee County despite the presence of the Ordinance. In January 2016, the City accordingly adopted 106-51-5, an original domicile restriction, stating:

---

[1] This is phenomena is commonly referred to as the "dumping ground" effect.

[2] This is the current version of MCO 106-51; the City will refer to this version as "the Ordinance" unless otherwise specifically noted.

> 5. ORIGINAL DOMICILE RESTRICTION. In addition to the restrictions
> of sub. 3, but subject to sub. 4, no person who has been convicted of a
> sexually violent offense or a crime against a child shall be permitted to
> reside in the city, unless such person was domiciled in the city at the time
> of the offense resulting in the person's most recent conviction for
> committing the sexually violent offense or crime against a child.

(MCO 106-51-5); Def's Ex. 4 at 2; Def's Ex. 7, Milwaukee Legislative File #150773.

Unlike other original domicile restrictions that outright ban registered sex offenders who do not live in the municipality, the City's original domicile restriction has always been subject to the four exceptions found in MCO 106-51-4.

Plaintiffs are a group of designated child sex offenders subject to the Ordinance who seek to invalidate it as unconstitutional. Plaintiffs seek a preliminary injunction barring the City from enforcing §§ 106-51(3)(a) and 106-51(5) of the Ordinance. (Pls' Mot. Prelim. Inj. at 1.)

## LEGAL STANDARD

A preliminary injunction is an extraordinary equitable remedy that is only available when the movant shows a clear need. *Goodman v. Ill. Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). It is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984)). In order to determine whether such extraordinary relief is warranted, the district court "proceeds in two distinct phases: a threshold phase and a balancing phase." *Id.* at 1085–86.

3

The first phase of the preliminary injunction analysis, the threshold phase, requires the movant to make a threshold showing that: "(1) absent preliminary injunctive relief, [the movant] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [the movant] has a reasonable likelihood of success on the merits." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). Only if the movant can overcome these three hurdles does the Court move onto the second phase, the balancing phase. There, the Court must consider: "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the 'public interest')." *Id.* Thus, even if this Court is "fairly convinced that there are serious constitutional problems [with the ordinance]… a preliminary injunction may nonetheless be inappropriate if the relative harms strongly disfavor such relief." *Joelner v. Vill. of Wash. Park, Ill.*, 378 F.3d 613, 627 (7th Cir. 2004).

## ARGUMENT

### I. Plaintiffs Fail to Show They Have a Likelihood of Success on the Merits.

Plaintiffs' request for a preliminary injunction should be denied because they fail to show a reasonable likelihood of success on the merits for both their Ex Post Facto and Equal Protection claims.[3] As discussed in detail below, the Ordinance does not violate the

---

[3] Plaintiffs make no argument regarding the merits of their procedural due process claim that the Ordinance is unconstitutionally vague, and therefore may not do so in the reply brief. *See NutraSweet Co. v. X–L Eng'g Co.*, 227 F.3d 776 (7th Cir. 2000).

4

Ex Post Facto Clause because it is a non-retroactive civil regulation and Plaintiffs lack clear proof that the law is punitive in purpose or effect. Similarly, the Ordinance does not violate the Equal Protection Clause because it bears a rational relationship to the legitimate governmental interest of public safety.

### A.      The Ordinance Does Not Violate the Ex Post Facto Clause.

The Ordinance does not violate the Ex Post Facto Clause because it is a non-retroactive civil regulation that is neither punitive in purpose nor effect. The Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, prohibits retroactive punishment. In *Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003), the United States Supreme Court outlined a two-part test. First, the Court considered whether the restriction was intended "to establish civil proceedings" or impose punishment. *Id*. If the ordinance's stated intent was to not impose a criminal punishment, then a court must defer to that statement of intent. *Id.* at 92-93 ("[C]onsiderable deference must be accorded to the intent as the legislature has stated it."). Second, a court may only override the government's stated intention if there is the "clearest proof" that the law is "so punitive in purpose or effect as to negate the [City's] intention to deem it civil." *Id.* at 85.

In order to overcome this additional hurdle, Courts turn to a five factor analysis: (1) does the law inflict what has been regarded in our history and traditions as punishment; (2) does it impose an affirmative disability or restraint; (3) does it promote the traditional aims of punishment; (4) does it have a rational connection to a non-punitive purpose; and (5) is it excessive with respect to this purpose. *Does # 1–5 v. Snyder*, 834 F.3d 696, 701 (6th Cir. 2016) (citing *Smith*, 538 U.S. at 97).

5

Plaintiffs have not cited to any case where a court has struck down a sex offender residency restriction law as a *per se* violation of the Ex Post Facto clause. Rather, courts have split on whether sex offender residency restrictions violate the Ex Post Facto clause as applied to the state law or ordinance at issue. *Compare Doe v. Miller*, 405 F.3d 700, 723 (8th Cir. 2005) ("Given the challenge in determining precisely what distance is best suited to minimize risk to children without unnecessarily restricting sex offenders, and the difficult policy judgments inherent in that choice, we conclude that the Does have not established the 'clearest proof' that Iowa's choice is excessive in relation to its legitimate regulatory purpose, such that a statute designed to be nonpunitive and regulatory should be considered retroactive criminal punishment."); *Werner v. City of Green Bay*, No. 15-CV-216, ---F.3d.---, 2017 WL 3670032 (E.D. Wis. Mar. 23, 2017) (finding sex offender residency restriction ordinance did not violate Ex Post Facto because it was not punishment); *Vasquez v. Foxx*, No. 16-CV-8854, 2016 WL 7178465, at *4 (N.D. Ill. Dec. 9, 2016) (finding Illinois' sex offender residency restriction statute does not violate the Ex Post Facto Clause because it was not retroactive);[4] *Duarte v. City of Lewisville*, 136 F. Supp. 3d 752, 776 (E.D. Tex. 2015), *aff'd sub nom. Duarte v. City of Lewisville, Texas*, 858 F.3d 348 (5th Cir. 2017) (Ex Post Facto claim not raised on appeal) ("The Ordinance on its face does not impose a circumstance that has been regarded in our history and traditions as punishment."); *with Does #1-5 v. Snyder*, 834 F.3d 696, 705 (6th Cir. 2016), *reh'g denied* (Sept. 15, 2016) (finding that Michigan's SORA law, restricting

---

[4] A review of the court records shows that both the *Werner* and *Vasquez* decisions are currently on appeal in the Seventh Circuit Court of Appeals.

where people can live, work, and loiter, imposed punishment in violation of Ex Post Facto); *Hoffman v. Vill. of Pleasant Prairie*, No. 2:16-CV-697-JPS, ---F.3d.---, 2017 WL 1380560, at \*6 (E.D. Wis. April 17, 2017) (finding plaintiffs "produced sufficient proof that the Ordinance's stated non-punitive purpose is overborne by its punitive effects").[5]

Here, Plaintiffs do not argue, nor could they, that the stated intention of the Ordinance is to impose a criminal punishment. The Ordinance specifically states: "It is the intent of this section not to impose a criminal penalty but to serve the city's compelling interest to promote, protect, and improve the health, safety and welfare of the citizens of the city…." (MCO 106-51-1.) Thus, in order for the Plaintiffs' motion to succeed, this Court must apply the *Smith* analysis and be willing to override the Ordinance's stated findings and intent.

### 1. The Ordinance Does Not Violate the Ex Post Facto Clause Because It Does Not Impose Retroactive Punishment.

Prior to delving into the *Smith* factors, however, the Court must first determine if the Ordinance at issue is retrospective in nature. In *United States v. Leach*, 639 F.3d 769 (7th Cir. 2011), the Seventh Circuit examined whether the federal Sex Offender Registration and Notification Act ("SORNA"), violated the Ex Post Facto Clause. *Id.* at 772-73. In doing so, the court examined Section 2250(a), noting that it imposed up to ten years' imprisonment for failure to comply with SORNA's registration requirements and that a sex offender violates the statute when, at any time after SORNA was enacted, he or she travels in interstate commerce and then fails to register. *Id.* The court held that

---

[5] As Plaintiffs' brief notes, courts in the Eastern District of Wisconsin recently granted two preliminary injunctions in sex offender residency restriction cases. (Pls' Mot. Prelim Inj., at 10 n.5 (citing *Landeau v. Yorkville*, 2:17-CV-646 (May 26, 2017) and *Gray v. City of Franklin,* 2:17-CV-1057 (Aug. 3, 2017)).

7

Section 2250(a), does not violate the Ex Post Facto Clause because "the law targets only the conduct undertaken by convicted sex offenders after its enactment." *Id.* at 773.

In *Vasquez v. Foxx*, No. 16-CV-8854, 2016 WL 7178465 (N.D. Ill. Dec. 9, 2016), the court applied the Seventh Circuit's reasoning in *Leach* to an Illinois sex offender residency restriction law similar to the Ordinance at issue here.[6] *Id.* at *4-*5. The court held that under Seventh Circuit precedent, the residency statute did not violate the Ex Post Facto Clause because it was not "retrospective" in nature. *Id.* at *5. In doing so, the court reasoned that it was "impossible to meaningfully distinguish the residency statute, which similarly creates a 'prospective legal obligation' regarding a person's residence 'based on the person's prior history.'" *Id.* (quoting *Leach,* 639 F.3d at 773).

Applying the *Leach* and *Vasquez* analysis here, the Ordinance imposes only prospective legal obligations regarding a person's residence based on the person's prior history. Thus, the Ordinance should likewise not be considered retrospective in nature. For this reason alone, Plaintiffs fail to show a reasonable likelihood of success on the merits in relation to their Ex Post Facto claim. Alternatively, and as discussed below, even if the Court finds the Ordinance to be retrospective in nature, Plaintiffs still fail to make a showing that it is punitive.

> ### 2. The Five Factor *Smith* Test Does Not Support A Finding of Punishment in Violation of the Ex Post Facto Clause.

Plaintiffs fail to prove the Ordinance is punitive in purpose or effect. The five factor *Smith* test is "neither exhaustive nor dispositive but [the factors] are 'useful

---

[6] Notably, counsel for the plaintiffs do not reference either the *Leach or Vasquez* decision in their brief despite the fact they are counsel of record in *Vasquez.*

guideposts.'" *Smith*, 538 U.S. at 97 (internal citation omitted). The ultimate issue for the Court to decide is whether Plaintiffs can demonstrate the "clearest proof" that the law is "so punitive in purpose or effect as to negate the [City's] intention to deem it civil." *See id.* at 85. In analyzing the five *Smith* factors, it is clear that Plaintiffs cannot meet this stringent requirement.

As to the first factor, the Ordinance does not impose restrictions that have historically been regarded as punishment. Inherent in Plaintiffs' position is that the Ordinance is, in effect, banishment from the City. However, but for a footnote, Plaintiffs' brief fails to note the fact that the Ordinance provides four exceptions in which the residency restrictions do not apply, including a grandfather clause for those residing in Milwaukee before the enactment of the ordinance, an exception for persons under 17 years of age, a rolling grandfather clause for individual's living in lawful compliance only for a school, licensed day care, etc. to open within 2,000 feet of that person's residency and an exception for a familiar residence where the registered offender lives with a qualified family member who has previously established two years of residence at that location. (*See* MCO 106-51-4; Pls' Mot. Prelim. Inj. at 5 n.3.) These exceptions permit the designated offender to live in any residence within the City, regardless of distance to a school, licensed day care center, park, recreational trail, playground or any other place designated by the city as a place where children are known to congregate.

Plaintiffs' reliance on *Hoffman* is not persuasive because the Pleasant Prairie ordinance was far more restrictive than the Ordinance at issue here. Unlike the ordinance in *Hoffman*, the City's grandfather clause applies for life. (*See* MCO 106-51-4; *Hoffman,*

9

2017 WL 1380560, at *6 ("Unlike *Duarte*, the Ordinance's grandfather clause was of limited help to Plaintiffs, because for most of them, it only permitted them to remain until October 2016.")0. In fact, the *Hoffman* court stressed the "importance of an efficacious grandfather clause." *Id*. at *5 (citing *Duarte*, 136 F. Supp. 3d at 781–82). The *Hoffman* court contrasts the Pleasant Prairie ordinance to that found in the *Duarte* case, with its "multiple affirmative defenses that, if argued and proven, exempt the child sex offender from the residency restrictions." *Id*. In fact, the *Duarte* court found that the 2,000 foot restriction with its grandfather clause and exceptions (similar to the Ordinance), was reasonably related to its regulatory purpose even though the housing availability was "perhaps not many in number." *Duarte*, 136 F. Supp. 3d at 777 (noting only 92 housing units were available for sale and 36 housing units were available for lease outside the ordinance's protected zones). Similarly, the *Werner* decision, also recently decided in the Eastern District of Wisconsin, found that Green Bay's sex offender residency restriction ordinance did not amount to the traditional punishment of banishment. *Werner,* 2017 WL 3670032 (finding that "while the ordinances have substantially affected [plaintiff's] residential choices the City of Green Bay, he has not been expelled from the entire city").

Moreover, the *Hoffman* court stressed the ordinance's strict prohibition of any sex offenders from moving into the village and requiring any sex offenders in leaseholds to leave within six months of the ordinance's passage to be "nothing short of affirmative banishment." *Hoffman,* 2017 WL 1380560, at *4. Unlike *Hoffman*, however, the Ordinance here *does not* outright ban sex offenders from moving in the City of Milwaukee (the original domicile restriction is subject to the aforementioned exceptions)

10

and *does not* require anyone to move from their residence if they lawfully resided there prior to the enactment of the ordinance. (*See* MCO 106-51-5, Def's Ex. 4). Simply put, the Ordinance is not a traditional form of punishment, nor does it promote a traditional aim of punishment.

As to the second factor, the City concedes that the Ordinance imposes a restraint on designated sex offenders by limiting the locations where they may reside. However, that fact alone is not dispositive in the *Smith* analysis. "If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 U.S. at 100. As with the Alaska Sex Offender Registration Act at issue in *Smith*, the Ordinance imposes no physical restraint, creates no employment restrictions, and has no restraint on what lawful activities the designated offender may pursue. *See id*. Moreover, the cases Plaintiffs rely upon imposed restrictions far greater than the Ordinance at issue here. *See, e.g., Starkey v. Okla. Dept. of Corrs.,* 305 P.3d 1004, 1023-25 (Okla. 2013) (residency restrictions made regardless of whether original victim was a child or an adult) *Commonwealth v. Baker*, 295 S.W.3d 437, 445 (Ky. 2009) (taking issue with fact that grandfather clause did not apply to future schools or other facilities such that an offender could never establish a permanent home). Similarly, the third factor does little to support Plaintiffs' argument because courts have noted that "it is of limited importance because punishment goals often overlap legitimate civil regulatory goals." *Hoffman*, 2017 WL 1380560, at \*4 (citing *Snyder*, 834 F.3d at 704).

Finally, the Ordinance has a rational connection to a non-punitive purpose and is not excessive with respect to that purpose. In making this determination, courts normally

11

consider the fourth and fifth factors together, "for the less rational a restriction's connection to its stated purpose, the more excessive it will be in addressing that purpose." *Hoffman,* 2017 WL 1380560, at \*5 (citing *Smith,* 538 U.S. at 104–05, 123 S. Ct. 1140; *Snyder,* 834 F.3d at 704–05; *Miller,* 405 F.3d at 721–723). This is a low standard, yet the "most significant factor" in determining whether the ordinance's effects are not punitive. *See Smith,* 538 U.S. at 102. "A law serving nonpunitive goals 'is not punishment, even though it may bear harshly on one affected.'" *Moore v. Avoyelles Corr. Ctr.,* 253 F.3d 870, 873 (5th Cir. 2001) (quoting *Flemming v. Nestor,* 363 U.S. 603, 614, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960)).

Plaintiffs' arguments that the Ordinance did not consider the different risks posed by an offender or where that person was domiciled at the time of the offense are not persuasive. The City did not have to enact a regulation that was the *best* measure to achieve its goals; it need only enact a regulation that *reasonably* achieves the goals. *See Smith,* 538 U.S. at 105. As the *Duarte* court noted, courts have "consistently found that legislatures have a clear, compelling interest in protecting children from recidivist sex offenders." *Duarte,* 136 F. Supp. 3d at 780 (citing *Graham v. Henry,* No. 06CV381, 2006 WL 2645130, at \*9 (N.D. Okla. Sept. 14, 2006), *Smith,* 538 U.S. at 103, 123 S. Ct. 1140 and *Doe v. Bredesen,* 507 F.3d 998, 1006 (6th Cir. 2007)).

Moreover, the Seventh Circuit recently acknowledged the ongoing threat of recidivism among sex offenders in upholding the sex offender registration requirements of a Wisconsin resident who was convicted of a sex offense over 35 years ago in California. The court noted:

12

> [T]he government's interest here cannot be understated….'Sex offenders are a serious threat in this Nation,' *McKune v. Lile*, 536 U.S. 24, 32, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), and registration programs, such as the one Wisconsin has enacted, are aimed at protecting the public. According to the Center for Sex Offender Management, about 12 to 24% of sex offenders reoffend. [citation]. Therefore, the government has a real and justified interest in ensuring that the public has the ability to access this registry information.

*Murphy v. Rychlowski*, No. 16-1662, ---F.3d---, 2017 WL 3573779, at *5 (7th Cir. Aug. 18, 2017). Based on this reasoning and coupled with the Ordinance's stated intention, the Ordinance has a rational connection to a non-punitive purpose and is not excessive with respect to that purpose.

In sum, the *Smith* guideposts do not provide a sufficient basis for this Court to override the City's stated findings and intent of the Ordinance. The Plaintiffs have not shown the "clearest proof" that the effects of the Ordinance are so punitive as to negate the City's intent to impose a civil regulatory scheme and is, therefore, not a violation of the Ex Post Facto Clause of the United States Constitution.

**B.** **The Original Domicile Restriction Does Not Violate the Equal Protection Clause Because it is Rationally Related to the Legitimate Governmental Interest of Public Safety.**

Plaintiffs argue that the Ordinance violates the Equal Protection Clause because it impermissibly distinguishes people "based solely on where they lived at the time of their offense." (Pls' Mot. Prelim. Inj. at 17). As Plaintiffs acknowledge, this distinction does not target a suspect class and therefore the ordinance need only survive rational basis scrutiny in order to pass constitutional muster. (Pls' Mot. Prelim. Inj. at 17 (citing *Romer v. Evans* and applying rational basis standard)). An ordinance bears a strong presumption

13

of validity under rational basis review, and "it is irrelevant whether the reasons put forward to support the law or ordinance actually motivated the legislature." *Joe Sanfelippo Cabs Inc. v. City of Milwaukee*, 46 F. Supp. 3d 888, 893 (E.D. Wis. 2014). Under the rational basis standard, that ordinance does not even need to be universally effective to be lawful. *Id*. Instead, Plaintiffs must show: (1) the City intentionally treated them differently from others similarly situated; (2) the City intentionally treated them differently because of their membership in the class to which they belonged; and (3) the difference in treatment was not rationally related to a legitimate state interest. *Smith v. City of Chicago*, 457 F.3d 643, 650–51 (7th Cir. 2006). "'Under this lenient standard,' the Seventh Circuit instructs, a law 'must be upheld if [the Court] can reasonably conceive of any justification for it.'" *Hoffman,* 2017 WL 1380560 at *7 (quoting *Shaw v. Smith*, 206 Fed. Appx. 546, 548 (7th Cir. 2006)).

Plaintiffs fail to overcome the lenient rational basis standard. Plaintiffs rely solely on the *Hoffman* case in support of their argument that the original domicile clause violates the Equal Protection Clause. However, *Hoff*man is easily distinguishable because the Village failed to offer *any* justification for its original domicile clause. As the *Hoffman* court acknowledged, it "would likely [have been] compelled to find the Ordinance constitutional if the Village had offered any evidence providing such a justification, even as late as its briefing on the instant motion." *Hoffman,* 2017 WL 1380560, at *8. Here, the City easily overcomes this requirement with two justifications for its original domicile clause: (1) its history of disproportionately receiving nonresident sex offenders; and (2) the increased risk of recidivism for nonresidents.

14

1. **Absent an Original Domicile Restriction, the City Will Once Again Disproportionately Receive Nonresident Sex Offenders.**

The City accepts its responsibility to house criminals, including registered sex offenders, who are from Milwaukee upon their release from incarceration. It also accepts the social stigma, the monetary cost of enforcement and high risks of recidivism of sex offenders for not only sexual offenses but other offenses. *See* Kyle, D., *Examining Sexual Offences through a sociological lens a socio cultural exploration of causal and desistance theories*, 8 European Journal of Probation, 170-184 (2016) ("noting "[p]eople who commit sexual offences very often commit other offences") (attached hereto as Def's Ex. 8).

As discussed above, in 2007, when other municipalities started creating sex offender residency restrictions Milwaukee opened a file to create its own. (Def's Ex. 1.) However, it agreed to work with DOC officials to achieve statewide uniformity; a plan that resulted in no statewide legislation and fourteen of the nineteen surrounding municipalities in Milwaukee County creating sex offender residency restrictions. (*See* Def's Ex. 2 at 1; Def's Ex. 3 at 3-4.) To fill the need for housing non-Milwaukee sex offenders, DOC began disproportionately placing offenders in the largest and still-unregulated municipality in Milwaukee County, the City of Milwaukee.

Ultimately, no good deed goes unpunished. An analysis of two prominent Milwaukee neighborhoods, revealed unsurprisingly a 44.72% increase in sex offenders living in those neighborhoods since 2007. (Def's Ex. 3 at 3.) Despite having approximately only 60% of Milwaukee County's population, the City housed 89.1% of

15

all sex offenders in Milwaukee County in 2012. *Id*. at 6. In fact, the original domicile restriction was not included in the Ordinance until a year and half after the original Ordinance was passed, and only after it became abundantly clear the City continued to receive an amount of sex offenders that was highly disproportionate to its population. (*See* Def's Ex. 7.)

Currently, every municipality in Milwaukee County except Greendale and Hales Corners, two small municipalities with significantly higher property values than the City, have original domicile restrictions. (*See* Def's Ex. 6.) If the City is enjoined from enforcing its original domicile restriction, it will no doubt again receive an unfair and disproportionate amount of sex offenders within its boundaries. This very real threat to public safety is a rational basis for the original domicile clause.

> **2.      There is an Increased Risk of Recidivism if the Designated Sex Offender Does Not Have Social Ties to the Community.**

In addition to protecting public safety and reducing costs attendant to policing additional sex offenders, the Ordinance's original domicile restriction inherently recognizes the increased risk of recidivism of nonresidents. Research supports that a lack of social groups or networks, often attendant in a sex offender being placed in a municipality away from one's domicile, increases the risk of future sexual offenses and deters desistance. *See, e.g.,* de Vries Robbe, M., Mann, R., Maruna, S. & Thornton, D., *An Exploration of Protective Factors Supporting Desistance from Sexual Offending*, 27 Sexual Abuse: A Journal of Research and Treatment, 16, 26-27 (2015) (finding a place within a social group or network is a risk factor healthy pole for desistance from sexual

offending) (attached hereto as Def's Ex. 9);  (Def's Ex. 8 at 8) (at an aggregate level, but not necessarily at an individual level, environmental events, including relationship and employment promote desistance). Thus, having additional restrictions for nonresident sex offenders, a population that collectively poses a greater risk of reoffending than resident sex offenders, is rational.

Notably, and unlike the ordinance in *Hoffman*, the original domicile restriction in the City's Ordinance is subject to the aforementioned exceptions. For example, if the registered sex offender has a spouse, parent, grandparent, sibling or child who has established a residence for at least two years (a necessary condition to avoid family members claiming to be residents during a compliance check), that designated offender can live at that residence regardless of the offender's domicile at the time of his or her most recent offense. The Ordinance inherently recognizes that the lack of a pre-established social network of a nonresident can be overcome if that person is residing with a family member. *See, e.g.,* Steiner, B., Makarios, M., & Travis, Lawrence, *Examining the Effects of Residential Situations and Residential Mobility on Offender Recidivism*, 61 Crime & Delinquency, 375, 390 (2015) (finding during the months offenders lived with their spouse, parent or other relative they were less likely to move and less likely to recidivate) (attached hereto as Def's Ex. 10); Horney, J., Osgood, D. W., & Marshall, I. H., *Criminal careers in the short term: Intra-individual variability in crime and its relation to local life circumstances,* 60 American Sociological Review, 655, 668-672 (1995) (finding men who are married and cohabitating are less likely to recidivate) (attached hereto as Def's Ex. 11).

17

In light of the foregoing justifications for the Ordinance, the City meets the lenient rational basis standard. Accordingly, the Court should find that Plaintiffs' are unlikely to succeed on the merits of either the Ex Post Facto or the Equal Protection claims.

## II. The Harm to the Plaintiffs Would Not Be Irreparable.

To constitute irreparable harm, an injury must be certain, great, actual "and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Plaintiffs refer to examples that do not overcome the risk of the City opening the floodgates to once again receive registered sex offenders from across the state. For example, they cite to Plaintiffs McClenton and Anthony facing a risk of running up thousands of dollars of ticket debt, which, if unpaid, could land them in jail. (Pls' Mot. for a Prelim. Inj., at 19.) This is purely a monetary damages issue and not an appropriate basis for a preliminary injunction. Even so, six days after signing his Declaration, the Milwaukee Municipal Court suspended sentence on Mr. McClenton's total fine. (Def's Ex. 12, Eddie McClenton's Notice.) Similarly, Mr. Anthony's forfeiture was permanently stayed four days *before* the date of his Declaration. (Def's Ex. 13, Brian Anthony's Notice.)

Likewise, Plaintiffs rely upon Plaintiff Mulder, a Greenfield resident, trying to live with his wife, a Glendale resident. This is an issue for those municipalities and their domicile restrictions. Mulder can pursue the same remedy he seeks here: a preliminary injunction against those municipalities. Using the Plaintiffs' analysis, any individual classified as a designated sex offender from anywhere in the world can claim to be irreparably harmed by the original domicile restriction by merely stating an intention to

18

live in Milwaukee without any supporting analysis. This is, by definition, a "theoretical" injury. If anything, Plaintiff's argument supports the City's argument below that if a preliminary injunction is issued, it should only be limited to certain individuals (i.e. those declared as homeless), and not applied to the enforcement of the Ordinance in its entirety.

## III. The Balance of Harms Weighs in Favor of Denying Plaintiffs a Preliminary Injunction.

In contrast to the "irreparable harms" the Plaintiffs allege, there is no doubt the City will receive a disproportionate amount of sex offenders if enforcement of the Ordinance is enjoined. Even if the City were to amend its ordinance and increase housing options, any new ordinance would necessarily be subject to a grandfather clause, which, in turn, would permit the sea of new nonresidents to then lawfully stay outside of their social networks and within the City. This is a real, proven risk demonstrated by a real and recent increase in registered sex offenders when Milwaukee did not have its original domicile restriction. Thus, the final factor weighs against granting a preliminary injunction.

## IV. In the Event the Court Finds the Ordinance Violates the Ex Post Facto Clause but not the Equal Protection Clause, the Court Should Sever the Ordinance to Maintain the Original Domicile Restriction.

Injunctions need not be granted "all or nothing." The Court may limit its injunction to the enforcement of an ordinance as applied to the plaintiffs, while refusing to enjoin the enforcement of the ordinance in its entirety. *Joelner*, 378 F.3d at 619 (court properly refused to preliminarily enjoin village from enforcing two ordinances while

appropriately granting the preliminary injunction to permit plaintiff's business to continue to operate).

Likewise, the Court may consider the claims individually and grant only part of a preliminary injunction sought for the same ordinance. *See Milwaukee Mobilization for Survival v. Milwaukee Cty. Park Comm'n*, 477 F. Supp. 1210, 1218 (E.D. Wis. 1979) (permanently enjoining subsections (1) and (5) of a Milwaukee County ordinance, but not subsections (2), (3) and (4)). This is particularly true when the ordinance contains a severability clause. *Valley Health Sys., Inc. v. City of Racine*, 369 F. Supp. 97, 99 (E.D. Wis. 1973) ("Since the ordinance contains a severability clause, the several other challenged provisions should be given individual consideration."). In essence, Plaintiffs' two claims, Ex Post Facto and Equal Protection, are related to two sections of the Ordinance: (1) the 2,000 foot distance requirement in MCO 106-51-3-a (ex post facto) and (2) the original domicile restriction in MCO 106-51-5 (equal protection).

While the Plaintiffs have indicated an intention to pursue a class action, they have not yet filed a motion for the court to certify the class. As such, if this Court were to grant a preliminary injunction (in whole or in part), it would be inappropriate to extend the preliminary injunction beyond the named Plaintiffs. Using the Plaintiffs own analysis for "irreparable harm," it would be impossible for this Court to apply that analysis to unknown plaintiffs to determine any likelihood of success. As the *Joelner* court recognized, even if this Court is "fairly convinced that there are serious constitutional problems [with an ordinance]… a preliminary injunction may nonetheless be inappropriate if the relative harms strongly disfavor such relief." *Joelner*, 378 F.3d at

20

627. The relative harms to enjoining enforcement against *all designated offenders* without any analysis as to their risk to public safety strongly disfavors such relief as to grant an injunction beyond the named Plaintiffs. Regardless of who is affected by a preliminary injunction, if one is granted, that injunction should be limited only to provisions the Court finds satisfy both the threshold and the balancing phase. *See Girl Scouts of Manitou Council,* 549 F.3d at 1085-86. As with the ordinance in *Valley Health Sys.*, the Milwaukee Code of Ordinances has a built in severability clause applicable to its ordinances. MCO 50-17 (attached hereto as Def's Ex. 14).

Thus, the Court should similarly give the provisions in the Ordinance individual consideration. For example, if the Court finds a reasonable likelihood that the 2,000 foot distance requirement is in violation of the Ex Post Facto Clause but found a rational basis for the original domicile restriction, it could grant the preliminary injunction only in part and deny the preliminary injunction as to MCO 106-51-5 to permit the continued enforcement of the original domicile clause.

## CONCLUSION

For the foregoing reasons, the City requests that the Court deny Plaintiffs' motion for a preliminary injunction. In the alternative, the City requests that any preliminary injunction issued is limited only to the named Plaintiffs and only to the specific provision(s) that satisfy the requirements for a preliminary injunction.

21

Dated and signed at Milwaukee, Wisconsin this 28th day of August, 2017.

GRANT F. LANGLEY

City Attorney

**s/ NICHOLAS P. DESIATO**
Nicholas P. Desiato
Assistant City Attorney
State Bar No. 1068916
Elleny B. Christopoulos
Assistant City Attorney
State Bar No. 1105495

800 City Hall
200 East Wells Street
Milwaukee, WI 53202
(414) 286-2601
Email: ndesia@milwaukee.gov
Email: echris@milwaukee.gov
Attorneys for Defendant

1081-2017-1148/241680